UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

2023 JAN -3 PH 3: 30

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY

| | |
|---|---|
| BRANDON CALLIER, | § § § |
| Plaintiff, | § § § |
| v. | § § |
| SLD DOC PREP, INC., a Florida Corporation and ADELAINE DE LACARIDAD MENDEZ | § § § § § |
| Defendants. | § § § |

**EP 23 CV 0008**

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      The Plaintiff is BRANDON CALLIER ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant SLD DOC PREP, INC. ("SLD") is a corporation organized and existing under the laws of Florida and can be served via registered agent Adelaine De Lacaridad Mendez at 4222 NW 34th Lane, Cape Coral, Florida 33993.

3.      Defendant ADELAINE DE LACARIDAD MENDEZ ("Mendez") is a natural person, resident of Florida, and upon information and belief is the Chief Executive Officer, manager, and agent for service of process for SLD Doc Prep, Inc, and can be served at 4222 NW 34th Lane, Cape Coral, Florida 33993.

4.      Defendants SLD and Mendez are hereinafter referred to collectively as ("Defendants").

1

## JURISDICTION AND VENUE

5.    **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter

jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101

because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing

calls to Plaintiff; adds little complexity to the case.

6.    **Personal Jurisdiction.** This Court has specific personal jurisdiction over the Defendants

because they have repeatedly placed unauthorized calls to Texas residents, derive revenue from

Texas residents, and sell goods and services to Texas residents, including the Plaintiff.

Defendants purposefully place unauthorized calls.

7.    **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a

substantial part of the events giving rise to the claims—the calls and sale of goods and services

directed at Texas residents, including the Plaintiff—occurred in this District and because the

Plaintiff resides in this District.  Residing in the Western District of Texas when he received a

substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

8.    This Court has venue over the Defendants because the calls at issue were sent by or on

behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
### OF 1991, 47 U.S.C. § 227

9.    In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*.  Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16.     The FCC also recognizes that "wireless customers are charged for incoming calls whether

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18.    *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.    The FCC confirmed this principle in 2013 when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.    Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21.    A corporate officer involved in the telemarketing at issue may be personally liable under

the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

22.     At all tines relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with a phone number ending in -4604.

23.     At all times material hereto, Plaintiff was the subscriber of the telephone number ending in -4604 and paid his cell phone bill through Verizon Wireless.

24.     Plaintiff successfully registered his cell phone number ending in -4604 on the Do-Not-Call Registry in December 2007.

25.     Plaintiff registered his phone number on the Do-Not-Call list to obtain solitude from invasive and harassing telemarketing calls.

26.     Plaintiff did not have an established business relationship with Defendants.

27.     Plaintiff never consented to the calls alleged herein.

28.     Defendant SLD offers student loan consolidation services to consumers.

29.     Defendant SLD is owned and operated by Defendant Mendez.

30.     Plaintiff did not solicit the student loan consolidation services of Defendant SLD at any point in time.

5

31.     As part of their marketing Defendant Mendez hires and authorizes telemarketers to make unauthorized phone calls to thousands of consumers *en masse* using an automatic telephone dialing system ("ATDS") to solicit student loan consolidation services on behalf of Defendant SLD.

32.     Defendant Mendez approves of the contracts with these telemarketers.

33.     Defendant Mendez pays the telemarketers out of bank accounts he owns and controls.

34.     Defendant Mendez is well aware that the unauthorized phone calls being made on his behalf soliciting student loan consolidation services for Defendant SLD violate the TCPA.

35.     Plaintiff received six (6) phone calls to his personal cell phone ending in -4604 from telemarketers calling on behalf Defendants and six (6) calls from SLD's representatives soliciting their student loan services ("the calls"). The phone calls were not related to an emergency purpose and were sent without Plaintiff's prior express written consent.

36.     The calls from Defendants telemarketers were made using an ATDS that has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers.

37.     The calls from Defendants telemarketers started with  a 3-4 second delay followed by an audible beep (indicating the calls were made using an ATDS) before being connected to a telemarketer.

38.     On March 1, 2022, at 8:59 am Plaintiff received a phone call from an unknown telemarketer that falsely identified themselves as "Student Loan Forgiveness Centers." Plaintiff disconnected the call.

39.     Defendant Mendez instructs his telemarketers not to reveal their true identity and to say they are calling from "Student Loan Forgiveness Centers" for the sole purpose of ducking

6

liability for violating the TCPA.

40.     On March 1, 2022, at 9:04 am the telemarketer called Plaintiff back from phone number 702-359-9436 soliciting student loan forgiveness, Plaintiff was frustrated by the unauthorized calls and pretended to be interested only for the sole purpose of finding who was behind the call.

41.     The telemarketer asked Plaintiff qualifying questions regarding his student loan balance and current loan status. The agent also inquired as to Plaintiff's email and social security number which was used to access Plaintiff's student loan account at https://studentaid.gov.

42.     Defendants' representative informed Plaintiff he would be receiving a verification text message sent to his phone. The message then came from the " FSA" making it appear as if the Defendant was a representative of the Federal Government.

43.     Plaintiff received an email from address Cs@slddocprep.com containing a contract that revealed SLD was behind the phone calls. Plaintiff declined to sign the contract and stated he was not interested.  Defendants' agent then voided the contract.

44.     On March 24, 2022, Plaintiff received multiple calls from phone number 804-776-5735. Plaintiff answered one of the calls and was connected to a representative from SLD.

45.     The representative solicited Plaintiff again and sent Plaintiff another contract from SLD.

46.     On March 28, 2022, Plaintiff received a phone call from the number 915-279-2621, it was the same telemarketer from paragraph 34 pressuring Plaintiff to sign the contract. Plaintiff told the agent he was not interested.

47.     On June 23, 2022, and July 15, 2022, Plaintiff received additional calls soliciting student loan forgiveness.  The agent did not identify whom he was calling on behalf of. Plaintiff went through the process only for the sole purpose of finding who was behind the calls.  This resulted in Plaintiff being sent yet another contract from SLD.

7

48.     Table below displays calls made to Plaintiff on behalf and from Defendants.

TABLE A

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 03/01/2022 | 8:59 AM | 601-586-7924 | Call from a telemarketer on behalf of SLD |
| 2 | 03/01/2022 | 9:04 AM | 702-359-9436 | Callback by telemarketer |
| 3 | 03/01/2022 | 9:06 AM | 601-586-7924 | Callback by telemarketer |
| 4 | 03/01/2022 | 4:15 PM | 702-359-9436 | Missed call from telemarketer |
| 5 | 03/24/2022 | 1:53 PM | 804-776-5735 | Direct Call from SLD Declined call |
| 6 | 03/24/2022 | 1:54 PM | 804-776-5735 | Direct Call from SLD Missed call |
| 7 | 03/24/2022 | 2:00 PM | 804-776-5735 | Direct Call from SLD. Sent contract. |
| 8 | 03/25/2022 | 10:24 AM | 804-776-5735 | Missed call |
| 9 | 03/28/2022 | 5:29 PM | 915-279-2621 | Direct Call from SLD. Resent contract |
| 10 | 06/23/2022 | 11:43 AM | 202-996-3593 | Call from a telemarketer on behalf of SLD. Transferred to SLD went through process again they sent contract. |
| 11 | 07/15/2022 | 4:21 PM | 915-245-3207 | Call from a telemarketer on behalf of SLD. Transferred to SLD went through process again they sent contract. |
| 12 | 07/15/2022 | 2:25 PM | 923-385-6349 | Direct Call from SLD. Resent contract |

49.     Plaintiff     searched     the     Texas     Secretary     of     State     website
https://direct.sos.state.tx.us/telephone/telephonesearch.asp. and did not find a valid Texas
Solicitation Registration from Defendants as required by the Texas Business and Commerce Code
302.101.

50.     Defendants do not qualify for an exemption under TX Bus. Com. Code 301.101.

51.     Defendants have designed their business model to confuse consumers and trick consumers into believing the Defendants are affiliated with U.S. government and they are federal employees and/or agents.

52.     Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful calls, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful calls.

53.     Plaintiff has limited data storage capacity on her cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## VICARIOUS LIABILITY OF DEFENDANTS SLD AND MENDEZ

54.     Defendants are vicariously liable for the telemarketing calls that generated the lead on their behalf.

55.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

56.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

57.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

9

58.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately
> in order to obtain effective relief. As the FTC noted, because sellers may
> have thousands of independent marketers, suing one or a few of them is
> unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

59.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

60.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's

liability requires a finding of formal agency and immediate direction and control over the third-

party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

61.     To the contrary, the FCC—armed with extensive data about robocalls and Americans'

complaints about them—determined that vicarious liability is essential to serve the TCPA's

remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587

¶ 36.

62.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

63.     Defendants are legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

64.     Defendants knowingly and actively accepted business that originated through illegal telemarketing.

65.     Defendants knew (or reasonably should have known) that their telemarketer was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

66.     By hiring a company to make calls on their behalf, Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

67.     Moreover, Defendants maintained interim control over the actions of its telemarketers.

68.     For example, Defendants had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

69.     Furthermore, Defendants had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendants and the ability to require them to respect the National Do Not Call Registry.

70.     Defendants also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

71.     Defendants donned their telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched "student loan consolidation" services in the abstract.

72.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

73.     "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

74.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

75.     Defendants' telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendants. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

76.     Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

77.     Defendants are the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer.

## PERSONAL LIABILITY OF DEFENDANT MENDEZ

78.    Defendant Mendez is personally liable under the "participation theory" of liability

because he had direct, personal participation in the conduct that violated the TCPA, or

knowingly authorized such conduct. See, e.g., *Physicians Healthsource, Inc. v. Doctor Diabetic*

*Supply, LLC*, No. 12- 22330-CIV, 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015).

79.    Mendez knew of Defendant SLD's TCPA violations, and specifically directed employees

and/or agents of SLD to make those violations despite being aware of the prohibition of using

automated text messages.

80.    Mendez authorized and oversaw each of SLD's telemarketing processes and illegal calls

which were made on behalf of SLD.

81.    Mendez knew, or should have known, that Plaintiff's telephone number was on the

National Do-Not-Call Registry long before the illegal calls were made, and despite this fact,

Mendez made the decision to  Plaintiff's cell phone number without his prior express written

consent.

82.    Mendez makes the day-to-day decisions for SLD.

83.    Mendez made the decision to target Texas telephone numbers for telemarketing purposes,

including Plaintiff's number.

84.    Mendez is also personally liable because he was responsible for ensuring SLD's agents

and/or employees do not solicit consumers with whom no prior business relationship existed.

85. "If the officer directly participated in or authorized the statutory violation, even though acting

on behalf of the corporation, he may be personally liable.  See *United States v Pollution Serv.*

*Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

86. The "well-settled" tort rule provides that "when corporate officers directly participate in or

13

authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General MotorsClore Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

87. Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

88. The Same Court held that corporate officers were also personally liable for DTPA violations

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

89. At all times material to the Complaint, acting alone or in concert with others, Defendant Mendez has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant SLD, including the acts or practices set forth in this Complaint.

90. Defendant Mendez is the principal director and operator of Defendant SLD, and control the day-to-day operations of SLD, and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and solicit "student loan forgiveness" services.

91. Defendant Mendez knew the collection of fees before rendering service is illegal.

92. Defendant Mendez is not a mere bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

93. Defendant Mendez is aware, Defendant's conduct violated the TCPA and Tex. DPTA and refused to alter their behavior. Defendant Mendez is the sole director of SLD, and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, they have taken no steps to stop the behavior because the behavior benefits them financially. Defendant Mendez breaks the law with his eyes and pocketbooks wide open.

94. Defendant Mendez should be held jointly and severally liable for both the TCPA violations

and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

95.     Defendant Mendez should be held personally liable because to do otherwise would simply allow him to simply dissolve SLD and set up a new corporation and repeat their conduct.  This would result in both the TCPA and DTPA being unenforceable.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

96.     Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

97.     Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

98.     Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

99.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### Plaintiff's cell phone is a residential number

100.    The calls were to Plaintiff's cellular phone 4604 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

16

## Violations of the Texas Business and Commerce Code § 302.101

101.    The actions of Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

102.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

103.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

104.    Defendants and/or their representatives or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least six (6) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an ATDS without prior express written consent.

105.    Defendants and/or their representatives placed unauthorized calls to Plaintiff's cellular telephone.

106.    Plaintiff never consented to receive the calls from Defendants.  Plaintiff has had no relationship with Defendants.

107.    Defendants' calls were made for purposes of advertising and marketing their goods and services.  These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

108.    As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful call campaigns.

109.    Not only did Defendants make these violating calls, but Defendants and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

110.    If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## COUNT TWO:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

111.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

112.    The foregoing acts and omissions of Defendants and/or their affiliates or telemarketers/representatives constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

113.    Defendants made unauthorized calls to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

114.   Plaintiff was statutorily damaged at least twelve (12) times under 47 U.S.C. §

227(c)(3)(F) by the Defendants by the calls described above, in the amount of $500 per call.

115.   Plaintiff is entitled to an award of at least $500 in damages for each such violation.

47 U.S.C. § 227(c)(5)(B).

116.   Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful

violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE

## Violations of The Texas Business and Commerce Code 305.053

117.   Plaintiff incorporates the foregoing allegations as if set forth herein.

118.   The foregoing acts and omissions of Defendants and/or their affiliates or representatives

constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making

non-emergency telemarketing calls to Mr. Callier's cellular telephone number without his prior

express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC

227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with

the technical and procedural standards under this subsection.

119.   Plaintiff is entitled to an award of at least $500 in damages for each such violation.

**Texas Business and Commerce Code 305.053(b)**

120.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or

willful violation. **Texas Business and Commerce Code 305.053**(c)

## COUNT FOUR

## Violations of The Texas Business and Commerce Code 302.101

121.   Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each

and every allegation set forth in the preceding paragraphs.

19

122.   The foregoing acts and omissions of Defendants and/or their affiliates or representatives constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

123.   Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

124.   Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees. **Texas Business and Commerce Code 302.302(d)**.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.   Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.   A declaration that actions complained of herein by Defendants violates the TCPA and Texas state law;

C.   An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.   An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation and individual for six (6) calls.

E.   An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation and individual for twelve (12) calls.

F.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

G.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 jointly and severally against the corporation and individual for twelve (12) calls.

H.      An award to Mr. Callier of damages, as allowed by law under the TCPA;

I.      An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and equity

J.      Such further relief as the Court deems necessary, just, and proper.

January 3, 2023,                Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com